# E. R. ARTMAN & CO. v. WILLIAM TRUBY.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF INDIANA COUNTY.

Argued October 23, 1889—Decided January 6, 1890.
[To be reported.]

1. When an agreement of composition with creditors stipulates that it shall not be binding unless signed by all the creditors except certain named holders of liens, it is incumbent upon the party setting it up as a release of their claims by those who sign it, to show that the condition on which they consented to be bound has been fully complied with.

2. The fact that such agreement recites that the subscribers have little prospect of realizing anything on their claims and that the composition is made in order to secure something thereon out of the debtor's property, will not justify the importation into it, by construction contrary to its express language, of an intention that other secured creditors than those named shall not be required to sign.

3. The filing of a mechanics' lien for work or materials furnished upon the order of the owner of a building, does not release the owner from

personal liability for such labor or materials, or take away from the person so furnishing the same the character of a creditor, within the meaning of a stipulation for the assent of all the creditors of such owner to the composition agreement.

4. When, in pursuance of such agreement, the debtor has placed property in the hands of a trustee for sale and distribution among the signers, one of these is not estopped from treating the agreement as void for non-compliance with a condition precedent, by his mere omission to give notice before the sale of the property that he would so treat it, although third persons have given releases of liens to enable the property to be sold.

Before STERRETT, GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 195 October Term 1889, Sup. Ct.; court below, No. 252 March Term. 1883, C. P.

On April 6, 1883, there was filed in the court below a judgment note bearing date that day, given by William Truby to E. R. Artman & Co., for $92.20, and judgment was duly entered thereon for said amount. Upon said judgment, the plaintiffs issued writs of fieri facias and attachment execution, the latter of which was served on A. W. Kimmell as garnishee of the defendant. Thereupon, the defendant petitioned the court to open the judgment and let him into a defence. A rule upon the plaintiffs to show cause why this prayer should not be granted was issued and served, testimony was taken thereunder, and after a hearing the court made the rule absolute, directing that an issue be made up upon the plea of payment with leave, which was accordingly done.

At the trial of the issue on January 9, 1889, the following facts were shown:

The defendant, William Truby, who was engaged in mercantile business at Mechanicsburg in Indiana county, became insolvent about April 1, 1883. On April 2, 1883, there was entered upon the record a judgment in favor of his father, Simeon Truby, for $4,828.47. The same day a number of judgments were entered in favor of other creditors, upon which executions were issued, levies being made on all the personal property of the defendant. He had a large number of creditors in Philadelphia, Pittsburgh and Indiana, whose claims were not then reduced to judgment. The judgment

note entered by the plaintiffs on April 6th was given for a claim of this class, and other claims were likewise reduced to judgment about the same time. The judgments entered on April 2d, were, however, sufficient in amount to render doubtful the collection in full of any subsequently entered.

Desiring to attempt some sort of composition with his unsecured creditors, the defendant consulted Judge White then in practice at Indiana, who prepared an agreement for that purpose, three copies of which were made, one for signature by the creditors in Philadelphia, another for those at Pittsburgh, and the third for those residing at Indiana. The first of these papers was presented to the Philadelphia creditors, and, after the addition of the last clause stipulating that the agreement should not be binding unless signed by all creditors except certain ones specified, was signed by the plaintiffs and a large number of others, in the following form:

" Whereas, William Truby, of Mechanicsburg, Indiana county, Brushvalley P. O., has become financially embarrassed and there appears, at present, little prospect of the undersigned creditors realizing anything out of their claims. And whereas the said Wm. Truby is desirous of making such arrangement with his creditors who have no prospect of collecting their claims by a sheriff's sale, as will enable them to realize something on their claims out of his property. Now, the undersigned creditors of the said Truby, in consideration of his assigning, transferring and delivering to A. W. Kimmell, Esq., of Indiana borough, or to any other person whom the majority in number of the creditors hereto signing may agree upon and designate, for our use, all the goods and merchandise now in his store-house, cellar, granary or other attachments to his store-room in which he keeps goods and merchandise, and also all his accounts, notes, judgments and other evidences of debt he now holds and owns, and placing all the said goods and merchandise, accounts, notes, judgments and evidences of debt in our possession and control, to be sold and collected by us and the proceeds thereof to be applied to our claims pro rata, we hereby agree that we will accept such transfer and assignment of the goods, merchandise, accounts, notes, judgments and other evidences of indebtedness to be applied on our claims as aforesaid and that we will thereafter release and discharge the

said William Truby from the balance of his indebtedness to us remaining unpaid by the proceeds of the goods, merchandise, accounts, notes, judgments and other evidences of indebtedness, transferred, assigned and delivered to us and for our use as aforesaid. This agreement not to be binding or in force against the undersigned, unless all the creditors except John Truby, Simeon Truby, Thompson McCrea, John Stilts, J. C. Rugh & Bro. and C. Rugh, who are first judgment creditors of the said William Truby and are not to participate in the proceeds of the property above assigned, and the Farmers Bank which has collateral security for its judgment, unite in and sign this agreement."

The other two papers, which were identical with the foregoing, except that they did not contain its concluding stipulation, were signed by the greater part of the creditors residing at Pittsburgh and Indiana respectively.

A number of creditors, however, refused to sign either of these papers. The composition being likely to fall through in consequence of this, by reason of the conditional character of the agreement with those of the creditors in Philadelphia who had signed, Judge White communicated this fact to J. C. Rugh, who was a brother-in-law of the defendant. Thereupon Rugh placed in Judge White's hands the sum of $700, to be used in buying up the claims of the creditors who refused to assent to the proposed arrangement. The fund thus advanced by Rugh was his own money. It was used as directed, claims being purchased at from 35 to 50 per cent of their face, and assigned to Judge White, who held them for the use of Rugh, all of this being done without the knowledge of the defendant. In this way most of the creditors who had not signed the agreement were disposed of.

After the assignments of the claims thus purchased had been procured, neither Rugh nor Judge White signed the agreement of composition, but Judge White, as Rugh's attorney and representative, gave his verbal assent thereto. Miller Brothers, the Indiana County Deposit Bank, and certain mechanics' lien creditors, neither signed the agreement nor were asked to do so. The claims of these mechanics' lien creditors were for materials furnished to the defendant for a house built by him, were first liens upon the house and perfectly secured, and were

afterwards collected in full. Miller Brothers and the Indiana bank had judgments for their claims, and liens upon the personal property by virtue of executions issued on April 2, 1883. In addition to the lien of its judgment and execution, the bank held collateral securities for its claim, which it had received before the entry of the judgments against the defendant, and which were applied by it in the subsequent satisfaction of its judgment.

When he had completed his arrangements with the unsecured creditors, Judge White prepared a written agreement between Simeon Truby, of the first part, and the execution creditors of the defendant, of the second part, the purpose of which was to effect a release of the personal property from the lien of the levies made thereon, and permit it to be turned over to Kimmell in pursuance of the composition. It recited the entry of the judgments and the issue of executions in favor of the parties of the second part, the levies upon the personal property thereunder, and the endeavor of the defendant to effect a compromise with his subsequent judgment creditors and others having claims, by delivering to them, or to some person in trust for them, said personal property in full satisfaction of their debts; and provided that Simeon Truby should give to the parties of the second part preference of lien upon the defendant's real estate over his own judgment, and that the parties of the second part should stay their writs and release the personal property from their levies, upon the conclusion of a settlement between the defendant and his subsequent creditors as aforesaid. This agreement was signed by or on behalf of all the parties for whose signatures it was prepared, including Miller Brothers and the Indiana bank. Its stipulations were carried out, and Kimmell took charge of all the personal property mentioned in the composition paper, and proceeded to convert it into cash.

When Kimmell was ready to make a distribution, Rugh, as the owner of the claims purchased for him by Judge White, waived any right to participate therein, and those claims were eliminated from the distribution as made. From the proceeds of the goods which had been placed in his hands, and all available notes and accounts, Kimmell declared a dividend among the other unsecured creditors of twelve per cent on their claims.

In paying out this dividend he required the payees to sign receipts containing a release of the defendant from the debts on which the payments were made. Some of the creditors refused to sign such a receipt or accept the dividend. Among them was the firm of Smith, Seltzer & Co., whose claim amounted originally to $41.62. Alleging that their signature to the composition paper was made upon the condition that it should be approved by their attorney, and that it had not received his approval, they issued an execution upon a judgment which they had obtained for the amount of their claim, and levied on certain property as belonging to the defendant. Judge White testified that thereupon he paid to their attorney $35, which was about seventy per cent of their judgment, and took an assignment of the judgment to himself; that he made this payment out of his own money, and purchased the claim of his own motion, and without any authority from or consultation with the defendant, simply because the witness preferred not to be bothered with a law suit over such a small sum.

Artman & Co., the plaintiffs, refused to accept the dividend upon their claim and release the defendant, on the ground that the condition attached to their engagement so to do, to wit, that the composition agreement should be signed by all creditors with the exceptions therein specified, had not been complied with.

At the conclusion of the testimony the court, KREBS, P. J., of the 46th district, specially presiding, after reviewing the testimony, charged the jury in part as follows:

Now, gentlemen of the jury, I say to you as a matter of law, as I understand the law, that when a composition agreement of this kind does not relate to real estate, does not require. the transfer of real estate, or affect real estate, or an interest in real estate, a good and valid and binding composition can be made, or an agreement, whether it is a composition or something else, without it being signed, if it is assented to by the party who is to be bound thereby. . . . . [Therefore, I say to you, gentlemen of the jury, that I believe, and I instruct you in this case, that if all the creditors assented to this arrangement, all the class of creditors who signed these papers, it would be a good and valid arrangement, whether they all actually signed the paper or not.] [3]

Now, gentlemen of the jury, the evidence upon this subject is this, that there were a number of. creditors in Philadelphia and Pittsburgh, probably from five to eight in number, who declined to sign this paper. This arrangement, it was thought, could not be effected without their consent. Thereupon, these claims, as testified to by Judge White, were purchased for Mr. Rugh, and the assignments taken to Judge White, he paying therefor a considerably larger amount of money than the creditors would otherwise have gotten if they had signed this paper and shared along with the others. The evidence would indicate that the creditors who thus stood out and refused to sign, received about fifty per cent of their claims. The evidence is that this was done without the knowledge of Mr. Truby; he was not consulted about it; it was not his money; no part of this fund was taken away from these creditors in any shape or form. . . . .

Now this brings up the question as to whether or not such an arrangement can be made in law, whether it is valid. We have been referred to cases, here, in which it has been decided that all the creditors, where there is a stipulation of this kind, must sign, and that if one creditor receives. more than the stipulated amount, that the balance are discharged; that is, that they may take what they can get out of the composition, and then may sue for the balance of the claim. Their part of the contract by which they had agreed to release the debtor is not binding upon them under such circumstances. Now, gentlemen of the jury, that is true, in a composition deed such as those cases refer to, where the parties agree to pay a stipulated sum of money; and we would have no difficulty in this case whatever, if this were just exactly that kind of a case. But the distinction here is that there was no agreement that any specified sum of money should be paid the creditors who signed this paper. The only agreement was that certain property should be turned over to Mr. Kimmell, or some other person to be chosen by the majority of the creditors, who should dispose of it for their use, and, upon the payment to them of the proceeds, they were to release Mr. Truby from further liability.

[Now, gentlemen of the jury, I can see no reason in morals, and none in law, why a transaction that is otherwise bona fide and honest; where the creditor has not furnished the fund;

where he is not the party who causes the payment of the amount in excess of what the others would have received; where there is no contract and no deceit, no fraud practiced upon the creditors, why an arrangement such as testified to here is not legal. . , . . And therefore, it appearing undisputed that Judge White for Mr. Rugh, and Mr. Rugh himself, has assented to the property being disposed of in this way, and the other creditors having released their liens upon it, and Mr. Simeon Truby having released or preferred those creditors over him in any distribution of the real estate, William Truby's property, we think this arrangement is such that it ought to be carried out.] [3]

[Now another question is raised, which is very much like this; that is, that there were creditors here that did not execute or sign this paper. Four of them were called, or three, and testified that they had furnished materials to Mr. Truby in the erection and construction of some building or other, and they have entered, and had entered, mechanics' liens against the building for their claims. By that act, they declared that they had furnished those materials on the credit of the building, and not on the personal credit of William Truby; and after a careful examination of these papers, I am fully persuaded that, so far as those creditors are concerned, they were not required to sign this paper, or either of them. Their claim is what is known in law as a claim in rem. It was a claim against the building, and was not a personal claim against William Truby, and, if that building did not pay that claim, that was the end of it. There was no personal liability further by Mr. Truby, and, therefore, it was not necessary that these persons should sign this paper, or assent to it even.] [4]

[That brings us to another claim, and that is the claim of the Indiana Deposit Bank. You will remember the testimony of Judge White and the testimony of William Truby, William Truby particularly. He testifies that some six weeks before these difficulties came upon him, he had deposited, and I suppose it was at the time he obtained the lien, he had given to the Indiana Deposit Bank as security for a note they held of his,— we don't know when it was discounted, but probably at that time,—four or five notes, judgment notes he held against other parties. The Indiana Deposit Bank had a judgment against William Truby, and, in order to perfect this arrangement, they

along with the persons named in the Philadelphia agreement, stayed their writs and executed this agreement by which this property was released and turned over to Mr. Kimmell, so that the proceeds of it could be applied to the persons who had already signed those papers or assented to them. Well now, gentlemen of the jury, that, in my judgment, is a sufficient answer to the allegation that they were bound to sign this paper. Without their consent and without their signing that paper and thereby releasing their levy on this personal property, for they were otherwise secured, this arrangement could not have been perfected, and these creditors could not, so far as the evidence in this case shows, have obtained anything.] [5]

It is true E. R. Artman & Co. have not taken anything; they have declined to take the pro rata, but that, of itself, would make no particular difference. They were entitled to the pro rata, unless they can, through this proceeding, have this entire arrangement nullified, and obtain a payment of their claim in full by attaching the proceeds of this property in the hands of Mr. Kimmell.

We are asked by the plaintiffs to say to you,

1. That it appearing by the uncontradicted evidence in the case that all the creditors of William Truby, the defendant, did not sign the composition paper marked exhibit A, signed by Artman & Co., the plaintiffs, except those named therein who were not to sign, that contract is void as against Artman & Co. and the verdict must be for the plaintiffs.

Answer: We decline to so charge you, and have given our reasons in our general charge. [6]

2. The composition agreement marked exhibit A having provided that all the creditors of William Truby should sign, except those specially named and excepted in said agreement, otherwise the agreement would be void, this required all to sign, whether secured creditors or not, excepting those named in said agreement, and if all others did not sign, the contract is void and the verdict must be for the plaintiffs.

Answer: We refuse that point for reasons given in our general charge. [7]

3. The purchase of claims of creditors who would not sign the composition papers, at fifty per cent or thereabouts, by the attorney for Truby, with money furnished by Rugh, the brother-

in-law of Truby, in order to get them out of the way, would be such a violation of the terms of the composition papers as would make it void as against those who did previously sign, even though the attorney making the purchase, did afterwards verbally assent to the terms of the agreement.

Answer: We refuse that point.[8]

[Now, gentlemen of the jury, this brings us to the conclusion of this case in which we believe that the defendant is entitled to your verdict, and we instruct the clerk so to take your verdict.] [12]

The jury rendered a verdict for the defendant as directed, and judgment was entered thereon; whereupon the plaintiffs took this appeal, assigning for error:

3–5. The parts of the charge embraced in [ ] [3 to 5]

6–8. The answers to plaintiffs' points.[6 to 8]

12. The part of the charge embraced in [ ] [12]

*Mr. J. N. Banks* (with him *Mr. Samuel Cunningham* and *Mr. H. K. Sloan*), for the appellants:

1. The agreement signed by the plaintiffs was no defence to their right to recover upon their note, for the reason that other creditors, upon whose signatures it was expressly conditioned, did not sign it: Lower v. Clement, 25 Pa. 65; Greer v. Shriver, 53 Pa. 259; Laird v. Campbell, 100 Pa. 159; Lane's App., 82 Pa. 289; Patterson v. Boehm, 4 Pa. 507; 2 Pomeroy's Eq. J., § 968. The paper stated what creditors were not to sign, and provided that if all others did not do so it should be void. The Indiana Deposit Bank ·and Miller Brothers were not among those thus excepted, and it was error to charge that, because they were sufficiently secured, it· was unnecessary for them to sign. The instructions respecting the mechanics' liens are too manifestly erroneous to need any discussion.

2. The purchase of claims as shown by the testimony, or the paying them off at from 40 to 70 per cent, when their holders could not be induced to sign the composition paper, was a fraud upon those who did sign, and avoided the contract. If Artman & Co. had known that on their refusing to sign, their claim would have been bought up at from 50 to 70 per cent, they would not have given their signature and taken the risk

of receiving only 12 per cent as offered. If the contract was void from this or any other cause, it could be ratified only upon a new consideration: Stuart v. Blum, 28 Pa. 225. None such is claimed to have been given. The court was clearly in error in directing a verdict for the defendant. There were questions upon which, if the court were not satisfied to give binding instructions for the plaintiffs, the case should have gone to the jury.

*Mr. John P. Blair* (with him *Mr. W. L. Stewart*), for the appellee:

1. Was the agreement signed or assented to by all the creditors concerned in it, within the meaning of the contract and the law controlling it? The agreement designates the creditors coming within its scope as those who "have little prospect of realizing anything" and "no prospect of collecting their claims by a sheriff's sale." No creditor would likely mistake its purpose; it would not occur to him that one having a lien that was certain to bring him payment in full, would be expected to abandon it and release the entire debt, in return for an agreement which on its face only promised him "something." Upon this question of construction we refer to Wells v. Greenhill, 5 B. & Ald. 869 (7 E. C. L. R. 472).

2. If the purchases of claims made by Rugh were not illegal, the agreement is not void by reason of his not having signed as the holder of those claims, for he distinctly assented to its terms, and afterwards waived his right to participate in the fund. A formal signing of such an agreement is not essential. It is binding on the creditor if he assents to it, and especially if he accepts money under it: Jolly v. Wallis, 3 Esp. 228; Ex parte Sadler, 15 Ves. 52; Fellows v. Stewart, 24 Wend. 294. When he waived his right to the money for reasons that recognized the obligation of the contract upon him, this was equivalent to an acceptance of the money.

3. We do not question the authorities cited by the plaintiffs, respecting secret preferences extended to a few creditors as an inducement to sign, but they do not meet this case. Rugh induced nobody to sign; much less did the defendant. The accounts purchased by Rugh were certainly the subject of sale. He bought them fairly, with his own money, and without the

defendant's knowledge. The defendant was under no obliga-
tion to reimburse him. The facts being undisputed, the ques-
tion of the legality of the purchase was for the court, and it
did not vitiate the composition: Babcock v. Dill, 43 Barb. 577.
Smith, Seltzer & Co. signed the agreement unconditionally.
In settling with them out of his own money and without the
defendant's knowledge, Judge White was merely buying ex-
emption from an unfounded law suit.

4. Even if the contract was not strictly followed as to pro-
curing the signatures of all, creditors interested in it, the
plaintiffs should be estopped, at this late stage of the proceed-
ings, from questioning its validity. What is called the com-
position paper is not the ordinary form of composition. The
creditors secured by executions abandoned that security in
favor of those who otherwise would have gotten nothing, and,
in compensation, Simeon Truby gave the execution creditors
priority of lien on the real estate. The original rights of the
secured creditors are now gone and cannot be restored. The
plaintiffs expressed no dissent till months afterward, when
Kimmell, as the agent of themselves and others, had sold the
property and partly distributed its proceeds.

OPINION, MR. JUSTICE McCOLLUM:

The plaintiffs obtained a judgment against the defendant in
the Court of Common Pleas of Indiana county, on April 6,
1883, for $92.20. On January 14, 1886, on the application of
the defendant, this judgment was opened to allow him to show
that the plaintiffs had agreed with him to satisfy it, on his
transferring to A. W. Kimmell certain specified property in
trust for the benefit of the plaintiffs and certain other creditors
of the defendant, and that he had complied with his part of
the agreement.

The agreement relied on as the basis of the defence to the
judgment, was in writing, and contained the following provi-
sion: "This agreement not to be binding or in force against
the undersigned, unless all the creditors, except John Truby,
Simeon Truby, Thomson McCrea, John Stilts, J. C. Rugh &
Bro., and C. Rugh, who are first judgment creditors of the said
William Truby, and are not to participate in the proceeds of
the property above assigned, and the Farmers Bank, which

has collateral security for its judgment, unite in and sign this agreement.

The agreement was signed by the plaintiffs, but it was not signed by all the creditors who, by its terms, were required to sign it, to make it binding upon the creditors who did sign it. Some of the creditors who refused to sign it were paid 50 per cent of their claims; others were paid in full, or secured, and Smith, Seltzer & Co., who did sign it, were paid 70 per cent, while the proceeds of the assigned property pay a dividend of 12 per cent. It is claimed that these payments were made by Judge White with his own money, or money furnished by J. C. Rugh, a brother-in-law of the defendant, and without the defendant's knowledge; that the parties who furnished the money make no demand upon the defendant, and that he is under no legal obligation to reimburse them; and that the plaintiffs cannot complain of these payments, because they are not prejudiced, but are benefited, by them. It is further claimed that it was not the intention or understanding of the parties to the agreement, that the creditors who were secured by judgment, mechanics' liens or collateral, should sign it.

The learned judge adopted these views, and directed a verdict for the defendant. In this, we think, he erred. The true inquiry was whether the plaintiffs were bound to accept the dividend under the assignment, in discharge and satisfaction of their judgment. Their undertaking was in writing, and on condition that all the creditors except six "first judgment creditors," who were named, should sign the agreement. There was no ambiguity in the written instrument, and there was no claim or evidence of fraud or mistake on which to modify or reform it. We must therefore accept and construe it as it is written. We can enforce contracts as parties make them, but we cannot make contracts for them. If it could be demonstrated that the plaintiffs would receive a larger dividend under the assignment, by reason of the payments made as claimed, it would not defeat their right to insist on the condition on which they consented to be bound.

In Lower v. Clement, 25 Pa. 63, it was held by this court that where an instrument of release stipulated that it should be void if not agreed to by all creditors in a given place, and it was signed by several, the party setting it up must show that

those who assented comprised all the creditors designated; and WOODWARD, J., said that a defendant, seeking to defeat a clear legal liability under such an instrument, was bound to prove performance of every condition on which its effect was limited. In Greer v. Shriver, 53 Pa. 259, the plaintiff signed an agreement to take 50 per cent of his claim, "on condition that all the creditors sign." He received the 50 per cent, and gave up his notes, but all the creditors did not sign, and some were paid in full, and it was held that he might recover the balance of his claim from his debtor. The decisions in Lane's App., 82 Pa. 289, and Laird v. Campbell, 100 Pa. 165, are to the same effect.

The creditors who entered mechanics' liens against the defendant for materials furnished or labor done at his request, did not, as was supposed by the learned judge, thereby release him from personal liability for such labor and materials. When the owner and the contractor are the same person, there may not only be a mechanics' lien filed against the owner and contractor, and that prosecuted to judgment, but a personal action may be brought against the owner or contractor on his personal liability on the contract. A party may have many securities for the same debt, and may proceed on them all until he obtains satisfaction: Powell v. Manufacturing Co., 8 W. N. 293.

As the condition on which the plaintiffs signed the agreement has not been complied with, and they have not waived it, or done anything to estop them from setting it up, the judgment must be reversed. It was the duty of the court, upon the whole evidence, to instruct the jury to return a verdict for the plaintiffs. We sustain the sixth specification of error, and, as this is decisive of the case, we need not discuss the remaining specifications.

> Judgment reversed, and venire facias de novo awarded.